UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**State of Ohio, ex rel. Michael DeWine, Ohio Attorney General,**

    *Plaintiff,*

v.                                                             Case No.  3:15-cv-376
                                                                              Judge Thomas M. Rose

**John D. Muncy, et al.,**

    *Defendants.*

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.** (DOC. 16).

---

This matter is before the Court for decision on Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. 16). The case arises from alleged actions of an owner and a predecessor-in-interest to the owner that are alleged to have resulted in damage to the environment. Count I, which asserts a claim for cost recovery under CERCLA pursuant to 42 U.S.C. § 9607(a), does not name Movant as a defendant. But the even-numbered claims of Counts II through VII charge the predecessor in interest, Defendant John D. Muncy, alone, while the odd-numbered ones charge Muncy and the owner, Defendant James O. Miller, jointly. Muncy seeks to have counts two through seven dismissed against him.

**I.  Background**

Plaintiff, the State of Ohio, seeks an injunction and damages against Defendants James O. Miller and John D. Muncy arising out of soil and ground water contamination at a former

manufacturing plant in Enon.   The site is approximately 400 feet north of the Village of Enon's public drinking water well field. Complaint ¶ 23.   Enon's well field is down gradient from the site. Complaint ¶ 24. In 1985, Enon detected vinyl chloride, a microbial degradation product of trichloroethylene, above the maximum contaminant level in a Village water production well. Complaint ¶ 25.

A corporation named REM Investments, Inc. owned and operated the plant from 1969 to 1996. Compl., PageID 4, ¶¶ 12, 20.

In April 1987, Ohio EPA inspected the site and found five gallons of waste trichloroethylene stored at the site. Complaint ¶ 27.   During 1991–92, the Ohio EPA conducted ground water sampling at the site. Complaint ¶ 28.   The results revealed volatile organic compounds Cis-1, 2-dichloroethylene at 490 micrograms per liter ("µg/l") and trichloroethylene at 180 ppb and vinyl chloride at 300 µg/l. Complaint ¶ 28.   During 1991–92, Ohio EPA also conducted ground water sampling from Enon's northern area of the well field. Complaint ¶ 29. The sampling results showed Cis-1,2-dichloroethylene, trichloroethylene, and vinyl chloride in the ground water that supplies the well field. Complaint ¶ 29.   In 1992, based upon the sampling results Ohio EPA determined that the source of ground water contamination at Enon well field were volatile organic compounds migrating from the site's manufacturing area. Complaint ¶ 30

In 1994, REM Investments and Ohio EPA entered into a consensual administrative order requiring REM Investments to remediate the site. *Id*., PageID 5-6, ¶¶ 31, 32.   Pursuant to the 1994 Order, REM Investments removed 150 tons of soil and injected reagent into the aquifer to cleanse the ground water. *Id*., PageID 6-7, ¶¶ 33, 34, 38, 39.

Starting in 2000, REM Investments used an ozone sparging system[1] to cleanse the aquifer. *Id.*, PageID 7, ¶ 41.  The Ohio EPA agreed that REM Investments could shut off the system in 2006. *Id.*, ¶ 42.

On December 29, 2006, the Director of Ohio EPA issued with REM Investments' consent "Director's Final Findings and Order to REM Investments" that amended the 1994 Order and required maintenance of the ozone sparging system and continued ground water monitoring. Complaint ¶ 43.  Defendant John D. Muncy signed the Order as President of REM Investments. Defendant's Motion, at 9.  The 2006 Order states that if there are exceedances of any maximum contaminant level for a volatile organic compound during two consecutive monitoring events, REM Investments shall restart the ozone sparging system within fourteen days of providing Ohio EPA notification of the second consecutive exceedance. Complaint ¶ 45.

REM Investments' ground water samples, taken in 2007-12, revealed maximum contaminant level exceedances for volatile organic compounds during at least two consecutive monitoring events. Complaint ¶ 46.  On June 14, 2011, Ohio EPA informed REM Investments that, as required by the 2006 Order, it was required to restart the ozone sparging treatment system and resume ground water monitoring activities. Complaint ¶ 47.  Again, on September 30, 2011, Ohio EPA informed REM Investments of its obligations under the 2006 Order to restart the ozone sparging system and resume ground water monitoring activities. Complaint ¶ 48.  On November 4, 2011, Ohio EPA issued a Notice of Violation letter to REM Investments that its failure to restart the ozone sparging system and to resume ground water monitoring was a violation of the 2006

---

1 Wikipedia informs: In chemistry, sparging, also known as gas flushing in metallurgy, is a technique which involves bubbling a chemically inert gas, such as nitrogen, argon, or helium, through a liquid.   This can be used to remove dissolved gases (e.g. oxygen) from the liquid.   By Henry's Law, the amount of dissolved gases in a liquid depend on the partial pressure of the gases exposed to the liquid.   Sparging increases the gas-liquid interface.   Other corners of the internet claim ozone is an inert gas.

Order. Complaint ¶ 49. Based upon ground water sampling conducted by Ohio EPA from 2001 through 2007 in Enon's well field and Enon's sampling of ground water from its production wells since at least the late 1980s, volatile organic compounds have migrated from the site to Enon's well field. Complaint ¶ 59.

On or about May 15, 2012, REM Investments sold the site property to Defendant James Miller for approximately $290,000.00. Complaint ¶ 21. Following its dissolution, REM Investments failed to notify Ohio EPA, a creditor of REM Investments, as required by Ohio Rev. Code § 1701.86(I). Complaint ¶ 22. Muncy as the President-executive officer and a shareholder of REM Investments allegedly knew about the violations of the 2006 Order and failed to exercise his authority to prevent and stop the violations. Complaint ¶ 22, 64-67, and 77-81.

In 2006, Ohio EPA and REM Investments agreed to another set of Director's Final Findings and Order providing that the sparging system would be restarted if the pollutants in the ground water exceeded cleanup standards for two consecutive months. *Id.*, ¶¶ 43 - 45. The Complaint alleges that such an event occurred between 2007 and 2012. *Id.*, PageID 8, ¶ 46. The Complaint contends that Ohio EPA instructed REM Investments to restart the sparging system, but that REM Investments did not do so. *Id.*, ¶¶ 47, 48, 49, 80. The Complaint does not disclose how often the pollutant levels have exceeded the cleanup standard since 2007, nor does it reveal the divergence between these levels and the cleanup standard.

According to the Complaint, contaminants have migrated to the Enon well field, prompting the State to request the reactivation of the sparging system. *Id.*, PageID 9, 18, ¶ 59, Prayer for Relief, ¶ F. The State portrays the site as a "substantial threat to public health or safety." *Id.*, PageID 9, 17, ¶¶ 60, 104.

On October 13, 2015, Plaintiff the State of Ohio filed this suit in federal court. As REM Investments has dissolved itself, *id*., PageID 4, ¶ 22, the State has sued John Muncy, an REM Investments President and shareholder, and James O. Miller, who purchased the land from REM Investments, for seven counts. *Id*., ¶ 12.

While Count I asserts a CERCLA violation against Defendant James O. Miller, Count II asserts violation of the 2006 Director's Final Findings and Order in violation of Ohio Revised Code § 6111.07(A) alleging REM Investments failed to maintain the ozone sparging system as required by the 2006 Order, for which Plaintiff alleges Muncy is subject to injunctive relief.

Count III alleges REM Investments discharged industrial wastes into Ohio waters on three occasions without a permit in violation of Ohio Revised Code § 6111.04. In count three, Plaintiff seeks joint and several injunctive relief against Muncy and Miller.

Count IV alleges Muncy alone is subject to an injunctive order from the Director of the Ohio EPA due to conditions constituting a substantial threat to public health or threatening to cause or contribute to air or water pollution or soil contamination. Plaintiff alleges it therefore is entitled to an order requiring Muncy to comply with the 2006 Order and reimburse Ohio EPA for costs that are necessary to abate water pollution and soil contamination at the site.

Count V alleges statutory nuisance against both Muncy and Miller in violation of Ohio Revised Code § 3767.13(B), as contamination in the ground water has allegedly migrated to and contaminated the ground water used by Enon's well field.

Count VI alleges common law nuisance against Muncy and seeks monetary damages.

Count VII asserts a claim of common law ultra hazardous activity against Muncy and Miller seeking injunctive relief and compensatory damages.

Muncy asks the Court to dismiss the counts against him, asserting, inter alia, that the Ohio EPA first asked REM Investments to restart the sparging system in June 2011 (*id.*, PageID 8, ¶ 47) but did not file this lawsuit for another four years.  Muncy contends that, if the site is such a threat, the State should not have waited until late 2015 to file this lawsuit.

**II.     Standard**

On a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff and its well-pleaded factual allegations taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Papasan v. Allain*, 478 U.S. 265, 283 (1986).  However, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  A complaint must contain either direct or inferential factual allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436-37 (6th Cir. 1988).  In keeping with these principles, a court considering a motion to dismiss may choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

**III.    Personal Liability Theories Under Ohio Law**

The State has sued John Muncy alleging that he can be held responsible for pollution allegedly caused by REM Investments.  Muncy claims the State is unable to prove liability on his part whether by means of piercing the corporate veil under Ohio corporate law or by means of liability for a corporation's debts or contracts under Ohio agency law or by means of personal liability expressly created by statute.  The State counters with an assertion that Muncy is liable for the violations alleged in Counts II through Count VII of the State's Complaint.

A.       **Participation Theory**

The facts alleged in the Complaint, if proven, would render Muncy personally liable for the claims alleged against him.  Muncy signed the 2006 Order as president of REM Investments. Defendant's Motion, at 9.  He knew about the requirements of the Order and had a duty, as president of REM Investments, to assure full compliance with the requirements of the 2006 Order. Id. and Complaint ¶ 12 and 43-46.  The State alleges that he failed to discharge a duty to act by ignoring Ohio EPA's notices on June 14, 2011, September 30, 2011, and November 4, 2011 that the treatment system was to be restarted because ground water samples taken by his company showed contamination above maximum contaminant levels for drinking water. Complaint ¶ 12, 46-49, 64-67, and 77- 81.   This alleged failure to act is alleged to be causing serious harm to the public drinking water used by the citizens of Enon. Complaint ¶ 59.

That the site was sold and REM Investments dissolved without notification to the Ohio EPA could be construed to show continued indifference and recalcitrance by Muncy to the requirements of the 2006 Order.   Indeed, the sale of the site and dissolution of REM Investments could be seen as an attempt to evade liability for the ongoing releases of contamination from the site.

Ohio courts have adopted the "participation theory" to find individual liability against a corporate president:

> Officers of a corporation are not held liable for the negligence of the corporation merely because of their official relation to it, but because of some wrongful or negligent act by such officer amounting to a breach of duty which resulted in injury.  To make an officer of a corporation liable for the negligence of the corporation there must have been []on his part such a breach of duty as contributed to, or helped bring about, the injury: that is to say, he must be a participant in the wrongful act.

*State of Ohio, ex rel. Dann v. Coen*, 5th Dist. No. 2008 CA 00050, 2009-Ohio-4000, ¶ 30(quoting

*Young v. Featherstone Motors, Inc.*, 124 N.E.2d 158 (2nd Dist. 1954); see also *State of Ohio, ex rel. DeWine v. Dear Lake Mobile Park, Inc.*, 11th Dist. No. 2013-G-3156, 2015-Ohio-1060, ¶ 55-61.

## B. Piercing the Corporate Veil

Ohio courts have found individuals responsible under the piercing the corporate veil theory when a sole shareholder or corporate officer commits fraud or an illegal act injuring a plaintiff. *State ex rel. Petro v. Mercomp, Inc.*, 853 N.E.2d 1193, 1199 (Ohio 2006) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 617 N.E.2d 1075 (1993)); also see *State ex rel. Celebrezze v. Dearing*, Cuyahoga App. Nos. 51209, 51220, and 51221, 1986 WL 12853 (Ohio App. Nov. 13, 1986)) and *State of Ohio, ex rel. Fisher v. Cleveland Trinidad Paving Co.*, 8th Dist. No. 65889, 1994 WL 12853, *5 and 6 (Ohio App. Aug. 25, 1994).

The State's Complaint alleges that Muncy is liable under Ohio's three-prong test for piercing the corporate veil:

> control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, (3) and injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Ass. v. R.E. Roark Cos.*, 617 N.E.2d 1075 (1993).

The Complaint alleges Muncy was a shareholder of REM Investments. The Complaint further alleges that, as the shareholder of REM Investments, he ignored the repeated warnings of Ohio EPA to restart the treatment system because ground water samples taken by REM Investments showed ground water contamination above maximum contaminate levels. Complaint ¶ 12, 46-49, 64-67, and 77-81. Such a violation of the 2006 Order would be an illegal act causing

8

a serious harm to a public water drinking supply and an ongoing injury to the citizens of Enon who are alleged to rely on this public water source for safe drinking water. Complaint ¶ 59.

Corporate shareholders who act in defiance of environmental requirements which caused injury to the citizens of the State of Ohio have been held liable under this theory. See *Ohio ex rel. v. Tri-State Group, Inc.*, 7th Dist. No. 03 BE 61, 2004-Ohio-4441, ¶ 66-88 (shareholder controlling environmental compliance decisions found personally liable for the contamination of an "exceptional source of drinking water"), *Ohio ex rel. Petro v. Mercomp, Inc.*, 167 Ohio App.3d 64, 2006-Ohio-2729 ¶ 20-43 (8th Dist.) (shareholder ignoring solid waste closure requirements found personally liable threatening both public and environmental health), and *Ohio ex rel. Petro v. Pure Tech Systems, Inc.*, 8th Dist. No. 101447, 2015-Ohio-1638, ¶ 13 and 42-52 (shareholder failing to address ongoing hazardous waste violations found personally liable for the harm to the environment and the citizens of the State of Ohio).

**C.     Count II - Injunctive Relief Ordering Muncy to Comply with the 2006 Order**

John Muncy knew the requirements of the 2006 Order and as President/executive officer and a shareholder of REM Investments had a duty to address the violations of the 2006 Order. Defendant's Motion, at 9 and Complaint ¶ 12 and 43-46. John Muncy allegedly ignored his duty to act despite the warning by Ohio EPA that the treatment system needed to be restarted to contain elevated levels of contamination as required by the 2006 Order. Complaint ¶ 12, 47-49, 64-67, and 77-81. If Muncy has violated the terms of the 2006 Order, this Court could issue an order enjoining Muncy to restart the treatment system and comply with the terms set forth in the 2006 Order. *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 378 N.E.2d 145 (Ohio 1978) (an injunction authorized by statute shall be issued to allow the State to enforce public policy),

*Tri-State Group, Inc.*, 2004-Ohio-4441 at ¶ 41-42 (when the State proves the violations a statutory injunction shall be issued, and the State need not prove irreparable harm).

Finally, Muncy would be liable for the violations of the 2006 Order if he controlled REM Investments' alleged decision not to comply with the Order. *Coastal Mart, Inc. v. Department of Natural Resources of State of Missouri*, 933 S.W. 947, 952-53 (Mo. 1996) does not hold that a person not listed on an order cannot be held liable under the participation theory or piercing the corporate veil. Neither does that case address these personal liability doctrines. *Coastal Mart, Inc*. held that the person from whom the state was seeking liability, a manager of the company, was not liable because there was no substantial evidence to find him having control of the waste. *Id*. at 953. Here, Muncy is alleged to have known the terms of the 2006 Order and to have had control to implement the requirements of the Order. He thus, is potentially liable under the participation theory or piercing the corporate veil doctrine.

**D.     Count III - Injunctive Relief Ordering Muncy to Abate Discharges of Waste into the Ground Water**

Count III seeks injunctive relief against Muncy and Miller for REM Investments' discharges of waste into the ground water. In April 2006 there was a reduction of contamination in the ground water, waters of the state, and Ohio EPA agreed that REM Investments could shut down the treatment system. Complaint ¶ 42 and 56. However, in 2007-12, REM Investments' ground water sampling, done pursuant to requirements in the 2006 Order, allegedly found ground water contamination increased. Complaint ¶ 43-46 and 54. The allegedly increased ground water contamination potentially shows continuing unpermitted discharge of waste into ground water in violation of Ohio Rev. Code § 6111.04. Complaint ¶ 83-87.

Plaintiff seeks an order dictating that Muncy and Miller comply with the 2006 Order to stop the alleged unpermitted discharges. Defendant's Motion, at 9 and Complaint ¶ 12 and 43-46. His alleged failure to act is causing water pollution in violation of Ohio Rev. Code § 6111.04. If Muncy has violated the terms of the 2006 Order, this Court could issue an order enjoining Muncy to restart the treatment system and fully comply with all terms and conditions set forth in the 2006 Order so that these ongoing discharges of contamination are abated. *Ackerman*, 55 Ohio St.2d. at 55-58, *Tri-State Group, Inc.*, 2004-Ohio- 4441 at ¶ 41-42.

**E.     Count IV - Injunctive Relief against Muncy for Contributing to Water and Soil Contamination**

In Count IV, the State seeks costs incurred to abate or prevent water pollution or soil contamination to protect public health and safety. Complaint ¶ 3 and 92 and 93. Ohio Revised Code § 3734.20(B) provides the Director the ability to "seek any other appropriate legal or equitable remedies" to abate water pollution and soil contamination which is "a substantial threat to public health or safety." If an order of the Director is not complied with, Ohio EPA may enter the facility and perform measures necessary to abate or prevent water pollution or soil contamination. The costs of the investigation and corrective measures performed are to be reimbursed to Ohio EPA.

In accordance with § 3734.20(B), the State is seeking an order from this Court that Muncy reimburse Ohio EPA for costs already incurred at the site and an order to permit Ohio EPA and its contractors to enter the site to perform investigations necessary to abate or prevent water pollution or soil contamination, if Muncy is found to have failed to comply with the 2006 Order. The State seeks cost reimbursement to be part of any such order from this Court. *Ackerman*, 55 Ohio St. 2d. at 55-58, *Tri-State Group, Inc.*, 2004-Ohio-4441 at ¶ 41-42.

**F.      Count V – Injunctive Relief against Muncy for Failure to Abate a Statutory Nuisance**

John Muncy's alleged failure to comply with the terms of the 2006 Order allegedly allowing elevated contamination to remain in the well field used by Enon as a public water supply would violate Ohio Rev. Code § 3767.13(B).  If § 3767.13(B) has been violated, a statutory injunction shall issue to abate the nuisance and address the damage to the public. Ohio Rev. Code §§ 3767.02 and 3767.06, *Ackerman*, 55 Ohio St.2d. at 55-58, *Tri- State Group, Inc*., 2004-Ohio-4441 at ¶ 41-42.

**G.      Count VI - Injunctive Relief and Monetary Damages against Muncy for Failure to Abate a Public Nuisance**

Muncy is alleged to have caused water pollution in violation of Ohio Rev. Code § 6111.04(A)(1).  Under Ohio Rev. Code § 6111.04(A)(2), "Such an action prohibited under division (A)(1) of this section is hereby declared to be a public nuisance."  The ground water resources that Muncy is alleged to have allowed to remain contaminated are held in trust by the State of Ohio. Complaint ¶ 10 and *State v. City of Bowling Green*, 313 N.E.2d 409 (Ohio 1974).  The Ohio Supreme Court explained the State's responsibility to protect property held in trust as:

> [W]here the state is deemed to be trustee of property for the benefit of the public it has the obligation to bring suit not only to protect the corpus of the trust property but also to recoup the public's loss occasioned by the negligent acts of those who damage such property. (citations omitted.).
>
> An action against those whose conduct damages or destroys such property, which is a natural resource of the public, must be considered an essential part of a trust doctrine, the vitality of which must be extended to meet the changing societal needs.

Id. at 283.   Since Muncy is alleged to have caused a public nuisance to property held in trust by the State of Ohio, the State seeks an injunction prohibiting the continuance of the public nuisance

and monetary damages for the loss of the citizens' of Enon drinking water supplied by the ground water resource.

**H.     Count VII - Injunctive Relief and Compensatory Damages against Muncy for Ultra Hazardous Activity**

Muncy's alleged failure to comply with the 2006 Order is alleged to have allowed contamination to remain in the ground water, a common law ultra hazardous activity. The State has suffered damages to a ground water resource it holds in trust for the benefit of the public. Prohibitory injunctive relief and payment of compensatory damages are potential remedies. *City of Bowling Green*, 38 Ohio St.2d at 283.

**I.     Attorney Fees Against Muncy**

In addition to injunctive relief and the payment of civil penalties, when the State has proved environmental statutory violations, attorney fees are a potential remedy. *State ex rel. Petro v. Mercomp, Inc.*, Cuyahoga C.P. No. 444454, p. 31, Conclusion ¶ 8, 2004 WL 5652265 (Apr. 26, 2004) (Defendants ordered to pay reasonable attorney fees assessed by the Office of the Attorney General), *State ex rel. Cordray v. Crab Creek Industrial Village, Inc.*, Mahoning C.P. No. 08-CV-1824, p. 2 (May 17, 2010) (a Defendant ordered to pay attorney fees in the amount of $3,626.25), *State ex rel. DeWine v. Arthur David Sugar, Sr.*, Jefferson C.P. No. 10-CV-159, p. 8 (March 27, 2013) (Defendants ordered to pay attorneys' fees to the office of the Ohio Attorney General), *State of Ohio ex rel. Petro v. Pure Tech Systems, Inc.*, Cuyahoga C.P. No. CV-06-597766, p. 40, ¶ Q (May 30, 2013) (Defendants ordered to pay attorneys' fees in the amount of $15,000 incurred by the State of Ohio).

**IV.    Conclusion**

The facts alleged in the State's Complaint, if proven, would establish that Defendant John Muncy is personally liable for the claims set forth in Counts II through Count VII.  Muncy is alleged to have known about the requirements of the 2006 Order, to have had a duty to assure compliance with the Order, to have been warned by Ohio EPA of the need to restart the treatment system, but, allegedly, failed to act.   Therefore, Defendant's Motion To Dismiss For Failure To State A Claim, (Doc. 16), is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, March 30, 2017.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE